UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**OGDEN BRIEN MCRAE**,                                    Case No. 3:15-cv-02373-KI

                    Plaintiff,                           OPINION AND ORDER

        v.

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**,

                    Defendant.

        George J. Wall
        1336 E. Burnside St., Ste. 130
        Portland, OR 97214

                Attorney for Plaintiff

        Billy J. Williams
        United States Attorney
        District of Oregon
        Janice E. Hebert
        Assistant United States Attorney
        1000 SW Third Ave., Ste. 600
        Portland, OR 97204-2902

Page 1 - OPINION AND ORDER

Sarah Moum
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Ogden Brien McRae brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying McRae's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

McRae filed an application for DIB on March 11, 2013, alleging disability beginning September 6, 2012. The application was denied initially and upon reconsideration. After a timely request for a hearing, McRae, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on January 27, 2015.

On March 24, 2015, the ALJ issued a decision finding McRae disabled beginning February 18, 2014, but not before. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on October 30, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security

PAGE 2 - OPINION AND ORDER

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

### THE ALJ'S DECISION

The ALJ found McRae's severe impairments were anterior scoliosis, mild hip degenerative joint disease, status/post hemicolectomy, and depression. The ALJ found that these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that prior to February 18, 2014, McRae was capable of performing medium work, except that he could only occasionally climb ladders, ropes, and scaffolds. He could frequently handle and finger bilaterally. He could understand and remember simple as well as complex instructions. He had sufficient concentration, persistence or pace to complete simple, routine tasks as well as complex tasks for a normal workday and workweek in two-hour increments with normal breaks. He could respond to usual changes in the work setting. As a result of this residual functional capacity ("RFC"), the ALJ found McRae capable of performing his past relevant work as a motel/hotel manager, janitor, merchandiser, or construction superintendent until February 18, 2014.

The ALJ accepted that McRae was disabled as of February 18, 2014 because, at that point, his RFC limited him to standing and/or walking two hours in an eight-hour workday, and because he needed a cane to walk distances longer than a 1/2 block. As a result, McRae could no longer perform his past relevant work, and there were no other jobs in the national economy that he could perform since the addition of limitations eroded the unskilled, medium work base.

PAGE 5 - OPINION AND ORDER

**FACTS**

McRae was 61 years old as of his alleged disability onset date of September 6, 2012.  He

has a work history as a motel/hotel manager, a janitor, a merchandiser and, most recently, as a

construction superintendent.  McRae had melanoma in his left leg in 2006, and the surgery to

remove the cancer also removed muscle from his leg.  Before his alleged onset date of disability,

and before he stopped working, he complained of leg pain and nerve pain in his foot, resulting in

a prescription for Gabapentin and physical therapy.  Tr. 356.  Although the physical therapy

helped, McRae obtained a note from his doctor in May 2012  to avoid climbing ladders after he

told her that his employer was "harassing him emotionally and getting him upset and still

want[ing] him to climb ladders."  Tr.  360.  McRae continued to complain of leg pain and

achiness, although an MRI was normal, and he was told to ice it and elevate it.  Tr. 342, 362,

366.  McRae was laid off from his job in September 2012.  Tr. 61.

At around the same time as his lay off, McRae underwent a right hemicolectomy.  He

recovered "very well" from the procedure.  Tr. 782.

McRae established care at the Veteran's Administration ("VA") in January 2013.  He

reported hip and back pain for the past four months, for which he had not sought care due to lack

of insurance.  He described pain in his left hip down his left leg which worsened with standing

and walking.  Tr. 510.  At that time, he also reported belching and gas, as well as heartburn, but

no abdominal pain.  McRae had a CT of his lumbar spine the next month, which showed no

significant spinal stenosis but did show moderate degenerative changes in the lumbosacral spine.

McRae also began attending counseling for depression that same month and was

diagnosed with depression in March.  Tr. 496.  He had a liver biopsy scheduled in March, to

assess an earlier identified liver mass, but it was cancelled when subsequent imaging confirmed no mass existed.  McRae sought care in April from the VA for pain in his thoracic spine; he was taking Tylenol and reported feeling a spasm every few days.  He was not using an assistive device for walking and testing revealed limitations on his left side only.  After strength and flexibility testing, the VA physician opined the condition did not impact McRae's ability to work.  Tr. 718.

In May 2013, the VA assigned McRae a 10% disability rating (effective as of March) to account for the painful motion he experienced in his thoracic spine.  McRae sought vocational assistance in July.  He reported to his therapist in August 2013 that he had applied for disability benefits based on his chronic pain and poor eyesight; he reported riding his motorcycle, although not as often due to leg pain.

At the request of Disability Determination Services, Emilio Gonzalez-Ayala, M.D., examined McRae.  Dr. Gonazalez-Ayala noted McRae was able to sit, stand, and move without difficulty, and could lift, carry, and handle objects without any trouble.  Dr. Gonzalez-Ayala could not induce any pain during the physical examination, except when flexing McRae's left hip joint.  Even then, McRae demonstrated no restriction of movement.  McRae had no inducible back pain, no paravertebral muscle spasm, no loss of motion, and he demonstrated full active and passive ranges of motion to all joints.  Dr. Gonzalez-Ayala did note "mild difficulty walking on heels and toes mostly due to his left hip pain but he is able to squat, hop, or walk in tandem."  Tr. 562.  McRae could walk without an assistive device.  The doctor ordered x-rays which revealed osteopenia and limited degenerative changes.

McRae returned to the VA in October 2013 for a follow up to his previous polyp surgery. At that time he denied any abdominal pain, vomiting, nausea, constipation, or diarrhea.  Tr. 668. Current treatment was continued, with a follow-up in one year.  McRae continued his therapy sessions; one goal was to actively look for employment.  Tr. 662.  When he reported loss of pleasure in activities at a follow-up session, he agreed to ride his bike, go to the barber, and listen to live music.  Tr. 657.  He reported being in a pretty good mood in January 2014, although he had lost his unemployment benefits as of December 2013.  He also sought alterations to his depression medication.

In January 2014, McRae sought treatment for his hip pain that he complained had been going on for a year and a half.  His VA physician notified him in February 2014 that McRae had a mild shortening of his right leg and that an appointment with a podiatrist to discuss shoe options might help his hip.  He was prescribed a cane.

## DISCUSSION

McRae challenges the ALJ's decision on two grounds:  her credibility assessment and her conclusion not to include limitations in the RFC to account for McRae's depression.

I.    Credibility

The ALJ found McRae not entirely credible for the period of September 6, 2012 through February 17, 2014.  The ALJ highlighted that McRae was laid off in September 2012, but applied for unemployment in October 2013, suggesting he felt ready to work then.  McRae testified he had been looking for other project manager jobs after he was laid off until the date his unemployment benefits ended in December 2013.  The ALJ also commented on McRae's ability to ride his motorcycle, relocate to Oregon to be near his son, and the fact that he was willing to

PAGE 8 - OPINION AND ORDER

watch live music in an effort to improve his mood. "These are not activities in which a disabled individual is likely to participate." Tr. 21.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

A claimant's activities could be relevant for one of two purposes. A claimant's daily activities might be so substantial such that they equate to an ability to work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Alternatively, the activities might be inconsistent with testimony purporting to be limited in some way. *Id.* McRae's testimony about his inability to walk more than 1/4 of a block due to pain in his abdomen, back, legs and hips, and his frequent bouts of

diarrhea, was inconsistent with other evidence in the record that he rode his motorcycle, moved across the country, and planned to listen to live music in an attempt to treat his depression. Although McRae's interpretation of the record is rational, the ALJ's reading of the record is "supported by inferences reasonably drawn from the record[.]" *Molina*, 674 F.3d at 1110.

Similarly, the ALJ rationally concluded from McRae's continued attempts to find work after he was laid off that McRae was physically able to return to work, and the ALJ's reading is supported by her summary of the medical record. Indeed, although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ highlighted the VA's 10% rating for osteoarthritis of the thoracic spine, as well as Dr. Gonzalez-Ayala's examination of McRae during which McRae demonstrated no pain, no restriction of movement, and normal gait and station. Although the ALJ did not directly tie her summary of the medical record to her rejection of McRae's testimony, her reasoning is easily discernable. *Molina*, 674 F.3d at 1121.

McRae argues objective evidence supports his need for extra, unscheduled bathroom breaks, which he testified he needed following his colon surgery. McRae does not cite to any objective evidence in the record to support his testimony. Indeed, as the Commissioner points out, McRae denied any gastrointestinal problems at his October 2013 appointment, and did not begin complaining about diarrhea until his 2015 appointments after his period of disability began. The ALJ did not err.

II.    <u>RFC</u>

McRae complains that the ALJ erred in his assessment of McRae's RFC.  Specifically,

McRae contends the ALJ should have include limitations caused by depression.  The ALJ found

moderate impairments in maintaining concentration, persistence and pace, but did not limit him

to performing simple tasks.

Contrary to McRae's assertion, the ALJ did not err.  First, there is no requirement that a

mental impairment constituting a "severe" impairment "must correspond to limitations on a

claimant's ability to perform basis work activities."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554

F.3d 1219, 1228-29 (9th Cir. 2009).  Further, the medical record–in the form of the state

psychological consultants' reports–fully supports the ALJ's RFC.  Tr. 21, 90-93, 104-109

(moderate difficulties maintaining concentration, persistence or pace, but could "understand,

remember, and carry out complex instructions, make decisions, concentrate for extended

periods").  There is no contradictory medical evidence in the record.  The ALJ did not err.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards.  For these reasons, the court affirms the decision of the

Commissioner.

IT IS SO ORDERED.

DATED this   21st   day of December, 2016.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge